1  payments, interest payments, made on the loan, which you,

2  in your action I guess identified as about $204,000 --

3          MR. LINCHEY: Correct, Your Honor.

4          THE COURT:  -- and the settlement gives you a

5  large portion of that.  But basically, the estate after

6  this is done, as I understand it, would be in the position

7  of having $175,000, not having the property anymore --

8          MR. LINCHEY: Correct.

9          THE COURT: -- and having the property out of the

10 estate so that the estate would not incur any additional

11 administrative expenses in dealing with this property.

12         MR. LINCHEY: Correct.  And would not incur any

13 capital gains tax from any foreclosure.

14         THE COURT: Right.  Because the property would be

15 sold -- it would be abandoned, and thus being abandoned,

16 the property would no longer be subject to administration

17 in the case.

18         MR. LINCHEY: Correct, Your Honor.

19         THE COURT: Now, what I -- as I understand that

20 situation, I don't know why and you can identify it to me

21 how it would differ, if the Debtor stepped into the shoes

22 in exactly the same way, that the property would be

23 abandoned to the Debtor, and the lawsuit abandoned to the

24 Debtor in payment -- for payment of higher than $175,000 or

25 some amount more than that, which would leave you again

6

1  with no capital gains, no property, no further

2  administration expenses with respect to the property.

3          Now, am I missing something?  It seems like the

4  Debtor -- if the Debtor paid a little more, that would be a

5  better offer for the estate.

6          MR. LINCHEY: Your Honor, you're not missing

7  anything, and in fact, in the course of the mediation

8  before Judge Newsome, that was an avenue that we tried to

9  explore also, but we never could reach any agreement with

10  the Debtor along those lines that was real and current.

11  There was an offer in the future that he could perform in

12  the future.

13          THE COURT: Well, except that the Debtor could

14  be -- the way the Court could deal with this is to say that

15  the settlement will be dealt with as follows: If the Debtor

16  pays "Y" dollars within, you know, 48 hours or whatever it

17  is, in cash U.S. funds to the estate, then the Debtor gets

18  this position.  If not, the settlement were approved --

19  assuming, you know, assuming it was otherwise approved.

20  Wouldn't that work mechanically?  The proof would be in the

21  check.

22          MR. LINCHEY: Yeah.  Yeah.  We agree, Your Honor,

23  and our concern all along, because of the continuing

24  representations of the Debtor that he could get refinancing

25  that never occurred, our concern on this issue all along

7

1   has been whether the Debtor can actually perform.  And we
2   have no problem if the Debtor can perform.

3          The other thing I'd like to mention is --

4          THE COURT: But you also want the property
5   abandoned immediately --

6          MR. LINCHEY: Oh, absolutely.

7          THE COURT:  -- because you don't want the capital
8   gain and you don't want the administration.

9          MR. LINCHEY: Correct.  And --

10         THE COURT: And the property would simply be
11  abandoned.

12         MR. LINCHEY: Correct.  We want the other terms of
13  the agreement with IGL other than the ones that directly
14  affect the Debtor such as that he be evicted and stuff, we
15  would not care about those.  One of the terms we do care
16  about though, in terms of the Debtor buying the cause of
17  action, we would want release -- a release from the Debtor
18  in terms of what he's buying in terms of the estate.  He
19  has alleged in his papers that there are other causes of
20  action that should be brought against IGL.  If he can do
21  that, fine.  But if he can't do that, we don't want him
22  coming back against the estate with regard to those.  In
23  the deal with IGL, we are settling all possible causes of
24  action, and if he's going to buy them; he buys them,
25  without warranty with regard to any of them.

8

1          The other thing I'd like to mention, Your Honor,
2    I communicated with Mr. Stone by e-mail when I received Mr.
3    Isola's offer from the Debtor yesterday.  Mr. Stone
4    apparently is out of town with his family and had not
5    intended to appear at the hearing this morning, but he
6    asked me to convey to the Court that if the Court were to
7    let the Debtor participate in some kind of an offer or bid
8    procedure here, that that matter -- that part of it be
9    continued to a further hearing so that IGL could decide
10   whether it wants to participate in that type of event.

11          THE COURT: In other words, they might pay a
12   little more in that context.

13          MR. LINCHEY: Correct, which would be beneficial
14   for the estate.

15          MR. ISOLA: On that point, Your Honor, are we
16   talking about a possible auction proceeding, or what would
17   be pursued in order to facilitate that?

18          MR. LINCHEY: I would envision some type of an
19   auction proceeding, Your Honor, between the two parties, if
20   they wanted to both participate.

21          THE COURT: Okay.

22          MR. ISOLA: Well, and since, unfortunately IGL is
23   not here, we would need possibly some input from them as to
24   when the auction would be scheduled.  I'm here, and Mr.
25   Hyler is here, so we're prepared to talk about days that we

1  are available.  The Trustee is here.  But how do we go
2  about scheduling an auction with IGL not present?
3            THE COURT: How long is Mr. Stone gone for?
4            MR. LINCHEY: He did not indicate, Your Honor, but
5  he didn't indicate that he had any conflicts or anything
6  either.  I would suggest we maybe continue this to like
7  June 11th.  That would give ten days to the parties, and if
8  there is any real --
9            (Counsel confers with the trustee.)
10           Oh, the Trustee can't be here, Your Honor.  I'm
11  sorry.
12           THE COURT: How about the 8th?  Assuming Mr. Stone
13  is available then, are you available?
14           MR. ISOLA: Friday the 8th will work for both me
15  and -- hold on one second.  Mr. Hyler?
16       (Mr. Isola confers with Mr. Hyler.)
17           Your Honor, Tuesday June 12 is the best day for
18  Mr. Hyler.
19           THE COURT: Ms. Wirum, is that day better than the
20  11th?
21           MS. WIRUM: Yes, it is, Your Honor.  I have a call
22  set at 8:00 o'clock that morning that I can maybe move, but
23  if we could put it maybe at 10:00?
24           THE COURT: Let me see what I've got on that date.
25  I don't really recall.  We have a chapter -- that's a

1 | Chapter 13 question. That's not going to be difficult.

2 | 10:00 o'clock would give us plenty of time, I think.

3 | MS. WIRUM: That would be good.

4 | MR. LINCHEY: That's acceptable to us, Your Honor.

5 | MR. ISOLA: You know, so we're clear, are we

6 | talking about the auction itself to be held Tuesday June

7 | 12th, 10:00 a.m., whereby we are all present here in the

8 | courtroom, Your Honor?

9 | THE COURT: M-hm.

10 | MR. ISOLA: Okay. And I will raise one issue.

11 | THE COURT: You go right ahead.

12 | MR. ISOLA: Okay. One other issue. My motion to

13 | withdraw as counsel was originally filed April 17. We were

14 | here before Your Honor on May 18th, and it had since been

15 | continued to May 21 and May 25th, and now to today. I still

16 | have some issues to discuss with Mr. Hyler, but I think it

17 | would be best if that motion be continued to Friday, June

18 | 8th. I don't know if Mr. Linchey wants to participate in

19 | that. I don't know if the Trustee's attendance would be

20 | necessary, but --

21 | THE COURT: Well, the only thing I can say is that

22 | if we wind up setting a hearing for June 12th, whether you

23 | withdraw or not, is going to have no bearing on whether

24 | that hearing goes forward on the 12th.

25 | MR. ISOLA: Understood. Yeah. I was not

1   connecting it, only so far as --

2          THE COURT: Let's talk a little bit more about
3   this settlement, and let me make a couple comments here.
4   Given the failure of this property to sell for a long
5   period of time, and given the Debtor's inability so far to
6   refinance the property and take the oath of secured
7   creditors and the estate out in that manner, and given the
8   limited amount that the Trustee could likely recover in
9   cash, this settlement makes sense, but -- and I would be
10  inclined to approve it. At the same time, I'd also be
11  inclined to let the Debtor simply outbid them because the
12  Debtor has an interest here and if the Debtor outbid the
13  other side by any amount of money, I think it would be
14  better for the interest of creditors and the Debtor to
15  allow the Debtor to control this litigation.

16         The estate has to represent both the Debtor's
17  residual interest and the creditors' interest.  The
18  evidence so far suggests that creditors' -- or the Debtor's
19  interest is very, very precarious and may not be reasonably
20  possible fully to protect, but I do think that although the
21  settlement appears to be reasonable, and I'll let you argue
22  about this further, I do think that this on reasonable
23  terms, meaning pay quickly, that the Debtor should be
24  allowed to outbid this other creditor, who would be fairly
25  treated under such a settlement because they would -- the

12

1    property would be abandoned and they could immediately
2    exercise all their State law rights and remedies, as would
3    the Debtor.  It would just not be a bankruptcy case
4    anymore.

5                MR. LINCHEY: Your Honor, we don't oppose that.
6    It's always been the case that we've always asked to have
7    the Debtor show us that he's got real dollars.

8                THE COURT: Right.  So I guess the question is,
9    does the Debtor have anything more to say about this --
10   about the settlement -- understanding that I will give the
11   Debtor a chance to overbid, but otherwise to address the
12   settlement.

13               MR. ISOLA: I do have at least one question, Your
14   Honor, and I discussed this briefly with Mr. Linchey.
15   There is currently a written agreement between IGL and the
16   Trustee, depending upon how things go on Tuesday, June 12th,
17   would the agreement -- if Mr. Hyler is the successful
18   bidder -- would the terms of the agreement between the
19   Trustee and him then be set forth on an oral record before
20   Your Honor, and that would be the agreement, or would
21   something have to be reduced to a writing?

22               THE COURT: Well, I think there would be an order
23   that would basically -- it would be an order abandoning
24   assets to the Debtor, all interest in the lawsuit, all
25   interest in the real property, to the Debtor.  So I think


1  upon that, and the Court -- the Debtor to make this
2  equivalent to the estate, the Debtor would also have to
3  basically release the Trustee against claims regarding
4  this, because they aren't going to get any if it's settled.
5  There won't be any other claims in the action.

6          But I think it would just simply be an order that
7  upon the payment of that in cashier's funds, within the
8  time required, that there would be an order abandoning the
9  property, and proper notice has been given the creditors,
10 to effect that, because that's what the settlement would
11 have done, basically to give up the estate's interest in
12 the lawsuit and to give up all interest in the real
13 property.

14         MR. LINCHEY: Your Honor, I would also suggest --
15         THE COURT: But I don't think -- I don't know what
16 more you need.  I don't think you need an agreement.  You
17 just get an order abandoning these things, and it would be
18 solely the property of the Debtor at that point.  What the
19 Debtor would have to do then is prosecute this lawsuit and
20 deal with the two secured creditors.

21         MR. LINCHEY: Your Honor, I would suggest that Mr.
22 Isola and I could also work on the terms of that order next
23 week, so everybody knows --

24         THE COURT: It would be very, very easy to do.
25         MR. LINCHEY: Yeah.

14

1          MR. ISOLA: Okay.  Let me just confer with my
2   client for a moment, Your Honor.

3          THE COURT: Yes.

4      (Pause.)

5          MR. ISOLA: My client raised a good point, Your
6   Honor.  It's sometimes difficult to predict how things will
7   go, but if IGL becomes the successful bidder on June 12th,
8   the odds are they may pay an amount different from their
9   settlement agreement with the Trustee.  The settlement
10  agreement does provide that if there's any modification, it
11  has to be in writing.  So if IGL is the successful bidder,
12  would that then also be memorialized in a court order and
13  not bound by the terms of the written agreement?

14          THE COURT: There would have to be some order
15  approving the settlement, subject to the following
16  modification, and both sides would have to agree to that
17  modification.

18          MR. ISOLA: Because there are other objections
19  that we've raised.  If Mr. Hyler is not the successful
20  bidder, there are other objections that we've raised to the
21  proposed settlement.

22          THE COURT: Right.  And I think we need to deal
23  with those, and some of those caused me some concern too.
24  And let me get to your opposition for a second, okay?
25          MR. ISOLA: It was largely the terms in paragraph

1   5 of the settlement agreement that we had problems with,
2   Your Honor.

3          THE COURT: Okay. Let me go to that. The
4   settlement agreement is -- I know I read it, but I have to
5   figure out -- remember which document it's in now.

6          MR. ISOLA: I think it's the only exhibit to Ms.
7   Wirum's declaration.

8          THE COURT: Yes, that's it. I've got it here. I
9   just found it. Thank you. Paragraph 5 -- well, I guess
10  I'm not sure what all provisions you're interested in. I
11  remember that you objected to some of this. I guess my
12  inclination here is to think, if the property -- the right
13  way to do this is simply abandon the property. I don't
14  know why the property isn't abandoned immediately. And if
15  the property is being abandoned, I don't know why the --
16  and there's a foreclosure, I don't know why this Court
17  would get in the business of evicting the Debtor after an
18  abandonment.

19         MR. LINCHEY: Well, to be candid, Your Honor,
20  those provisions arose again in the course of the mediation
21  before Judge Newsome, and frankly -- some at his
22  suggestion -- and it was because of what the Trustee and
23  IGL have seen the conduct of the Debtor throughout this
24  case and the fact that the Debtor has not been cooperative,
25  we expect and IGL expects the Debtor to do everything he

16

1    can to remain in that premises, and it was a real point of
2    negotiation between the Trustee and IGL as to who was going
3    to bear the burden of having the Debtor vacate that
4    premises so that the secured creditor can actually -- would
5    actually know that if the foreclosure took place, it would
6    have its collateral without having to deal with the Debtor
7    for another year or two at a very expensive rate.  And
8    that -- the mediation actually almost broke down on that
9    term.  It was continued over to another day, and we were
10   able to resolve it.

11           I understand the unusual nature of the term, but
12   it is also the reason that it's tied in with the timing of
13   the abandonment so that the property was still part of the
14   estate for purposes of evicting the Debtor and making sure
15   that he vacated the premises prior to the foreclosure sale
16   and if not prior to, that IGL would bear the burden of
17   enforcing that.  That burden, in the negotiations, IGL
18   wanted to put that on the Trustee and delay the
19   circumstance even further, increasing administrative
20   expenses.

21           The provision with regard to -- I think that was
22   also raised on -- in the event Ms. Root filed a bankruptcy
23   petition, that it be referred to Your Honor.  That again
24   Judge Newsome said was normal practice in the Oakland
25   Division.  I don't know --

17

1        THE COURT: It is very normal practice, if there
2   was another case filed.  It would be -- filing by a spouse
3   would be deemed a related case.  It would normally go to
4   the case handling the first filed case.

5        MR. LINCHEY: Right.

6        THE COURT: It doesn't need to be in an order.
7   That's kind of what would normally happen.  There's -- I
8   think a good argument can be made that the Court could
9   exercise jurisdiction over the eviction proceeding because
10  the proceeding has to do with the disposition of this whole
11  asset and property and it has an effect on the estate, and
12  it's related to.  But it's paragraph -- and, you know, upon
13  an abandonment, paragraph -- I mean, you know, the
14  relief -- the stay would vacate and be gone, under 362(c),
15  but I'm trying to figure out why (c) should work.  Now
16  you've brought a motion previously to remove the Debtor
17  from the premises because the Debtor wasn't paying the
18  mortgage, and you wanted to dispose of the property.

19       MR. LINCHEY: Correct.  And we took that off
20  calendar because of this motion, Your Honor.  We believed
21  that this superseded that, and that we would handle it in
22  terms of this.  Again, on the prior motion, if we proceeded
23  with that and obtained that order, it would have been
24  incumbent upon the Trustee to enforce that order and have
25  the Debtor removed.  We were trying to save administrative

18

1  expenses and not have these overlap each other.

2          THE COURT: Okay.  Go ahead.

3          MR. ISOLA: If I may, Your Honor.  That is

4  certainly one of the provisions that we have a real problem

5  with, is the eviction provision of paragraph (c).  They've

6  got a notice problem and that it's clearly some relief that

7  is targeted toward a specific individual, namely, Mr.

8  Hyler.  But it's also the curious situation that it doesn't

9  ask that his spouse be removed from the property.  Her

10 counsel is present and may address that.  So there is a

11 notice problem because they tried to include that eviction

12 along with a number of other provisions that would include

13 or require 28 days notice in a 20-day type settlement

14 approval motion.  It's roughly akin to two parties coming

15 in to have a settlement approved and saying, oh by the way,

16 why don't you grant summary judgment as to a non-party to

17 the settlement.  I think a court would have an obvious

18 problem with that.

19         I think you also hit it on the head by saying

20 that the abandonment would pretty much take care of the

21 issue.  So we argue on page 14, line 17 of our opposition,

22 if the property is abandoned, it reverts to the Debtor, and

23 the Debtor's rights to the property are treated as if no

24 bankruptcy petition was filed.  That's under 11 U.S.C. 554.

25 So that's at page 14, line 17 of our opposition.

1          They did bring a prior motion to evict.  That was
2   brought on 28 days notice.  The grounds for that prior
3   motion were that the Debtor was in contempt, and that they
4   needed him out of the property in order to facilitate a
5   sale.  Now they're talking about something completely
6   different.  Now they're saying, you know, the property, we
7   don't want it.  We want to abandon it.  It's going to deal
8   with this IGL settlement, therefore be done with it.  It
9   doesn't make sense to have the property abandoned while
10  still dealing with an eviction of the Debtor.

11          And I would also call attention to the reference
12  to comments by Judge Newsome.  Those were in the context of
13  the settlement discussion so anything that he said or
14  didn't say or may have said, I don't think should be given
15  any weight in this proceeding, because it's confidential or
16  should be confidential.

17          THE COURT: Well, it's not a judicial act
18  indicating the, you know, the propriety of it.  It's an
19  attempt to get the parties to agree.

20          MR. ISOLA: But my final point is --

21          THE COURT: Two of the three parties to agree.

22          MR. ISOLA: -- so if there is an order to be
23  entered on June 12 and if Mr. Hyler is not the high bidder,
24  I would ask now and I will ask then that it simply call for
25  abandonment of the property to him without getting into

1   relief from stay or eviction issues, that those just fall
2   by the wayside.

3           THE COURT: Let me ask one thing here.  Let me
4   read this order over again, okay -- or the settlement
5   agreement.  There's no order that's contemplated here.

6           "The approval order shall provide..."  Okay.
7       (Pause.)

8           Well, I guess what's really at issue here is what
9   is -- what can properly be done in the course of a
10  settlement between IGL and the Trustee as it affects third
11  parties.  Now, the Trustee can always promise to do -- to
12  exercise the rights of the estate in a certain way.  The
13  trustee cannot grant relief in a settlement, vis-a-vis a
14  third party, and I think that the -- as I go through this,
15  I should let everybody know right away that I think that
16  certain parts of this paragraph are okay, and certain parts
17  I think are over the line a bit.

18          I think that it is -- the way you've set this up
19  is I think that there would be -- the estate would in
20  furtherance of the settlement, to maximize the return to
21  the estate, would be seeking to remove the Debtor from the
22  property before it's abandoned, in furtherance of getting
23  the $175,000.  That's the gist of it.

24          MR. LINCHEY: That's the gist of it, Your Honor.
25          THE COURT:  Now -- and in that regard, it is

1  appropriate to have this Court retain jurisdiction.  The
2  Court would have jurisdiction in that setting.  I don't
3  think that there's any real problem with paragraph (e), the
4  related case, because that's what we would do anyway.  The
5  problem, as I see it, is that this -- that's just a
6  recitation of what would happen in any event.

7          But (c) has -- is -- doesn't allow the Debtor to
8  contest whether the Debtor should be forced to turn over
9  the property, possession of the property.  And I think
10 basically that the way this would have to be dealt with is
11 that if the Debtor does not outbid IGL, the settlement
12 could be approved subject to a condition subsequent, that
13 is, if the Debtor wasn't -- if the Trustee wasn't able to
14 deliver that, then IGL could back out.

15         But I think the Debtor has to be heard.  I can't
16 just grant relief vis-a-vis a third party like this,
17 because there are arguments that could be raised about why
18 the property shouldn't be turned over.  And that's not
19 merely giving, you know, assigning rights that the Trustee
20 clearly has now.  Now, it's probably -- in most instances,
21 the Trustee can -- the Trustee is -- the estate has title
22 to this property and the Trustee can generally exercise it
23 in a way that's appropriate to maximize value to the
24 estate, but I think it's probably true that the Debtor
25 should be able to be heard on this.  That's just -- it's

1  not customary to grant the Trustee possession of the
2  premises ex parte, which is basically what you're doing
3  here.
4           Am I making any sense?  Do you understand?
5           MR. LINCHEY: I think so, Your Honor, but I don't
6  think it's ex parte.  I think it's in the context of this
7  motion, and I think this was the opportunity for the Debtor
8  to respond as to why he should not have to vacate the
9  premises in the context of this settlement agreement.
10 So --
11          THE COURT: That there was some interest that --
12          MR. LINCHEY: Exactly, that --
13          THE COURT:  -- that supersedes this.
14          MR. LINCHEY: Correct.  That somehow that there
15 was something again for the estate because the estate is
16 getting the money here, and it's the estate's interest
17 first of all that is at issue, and in the context of this
18 settlement agreement, one of the provision is that the
19 Debtor will have to vacate the premises.  We don't get the
20 settlement money unless this provision is enforced and part
21 of the agreement.  And so I think this is the opportunity
22 that the Debtor has had to respond to that and tell this
23 Court why he should not have to vacate the premises.
24          MR. ISOLA: It's still that third party issue,
25 Your Honor.  If they're going to do that, then they have to

1  give specific notice to Mr. Hyler and give adequate notice
2  under Local Rule 9014-1(c). Then there's the related issue
3  of, if they want the Debtor out of the property, then what
4  are they doing as to the Debtor's spouse who also resides
5  in the property and tee up adequate notice as to her.

6         THE COURT: This property is community property;
7  is it not?

8         MR. LINCHEY: It's community property, Your Honor,
9  and IGL would more than be willing to accept a provision
10 that removed Mrs. Hyler also, but we did not think that
11 that was appropriate since she is not a debtor and we told
12 them we didn't think we could obtain that type of an order.
13 I don't know --

14        THE COURT: Well, what happens if she stays in the
15 house?  (Laughing.)

16        MR. LINCHEY: That's IGL's problem, Your Honor,
17 and that was a subject of discussion.

18        MR. ISOLA: That also explains why when they did
19 bring the prior motion to evict, it was specifically
20 directed to the Debtor, and Sheryl Root-Hyler, the Debtor's
21 spouse. They did not do so in this motion. So I agree
22 with Your Honor. I think if IGL is the high bidder, then
23 the Trustee would have to make a further application for
24 relief in order to evict the Debtor. And I also agree with
25 Your Honor's original point regarding paragraph (e) that if

1  that's what would happen, then it need not be in the

2  settlement agreement or in your order. If it's something

3  akin to the sun shall rise in the morning, then it's

4  something that may happen, but it need not be in a

5  settlement agreement or in your order.

6          MR. LINCHEY: Your Honor, I don't think there's

7  need for a further motion or further notice. They've had

8  20 days already. If we continue this hearing, they'll have

9  another ten days. They can set forth their opposition to

10  that provision. If that provision is stricken, we believe

11  we don't have a settlement agreement with IGL.

12          THE COURT: Okay. Any other objections? I

13  understand the point. I think I know what I'm going to do.

14  Any other provisions?

15          MR. ISOLA: I think the only comment I have that

16  if Your Honor is inclined to further entertain, when we

17  reconvene on June 12th, the issue of possible eviction,

18  without requiring some separate further application by the

19  Trustee, then Mr. Hyler should be granted leave to file

20  further opposition on that issue.

21          THE COURT: Yes. I understand. Okay.

22          MR. DIOLI: Your Honor, I would just note for the

23  record that Ms. Hyler herself filed an objection late

24  Friday, last Friday, with regards to failure to give notice

25  to her. She was not provided with any notice of this

1   hearing or the proposed settlement or the request for an
2   order approving it.  She is a party in interest, Your
3   Honor.  As I think Your Honor recognizes, the fact that she
4   is residing there, and this settlement purports to affect
5   her rights substantively as to community property rights
6   and her residence.  And she was not provided with any
7   notice.

8                   THE COURT: I guess the Court --

9                   MR. LINCHEY: If I can address that briefly, Your
10  Honor?

11                  THE COURT: Yeah.

12                  MR. LINCHEY: First of all, the opposition by Mrs.
13  Hyler is in align with the way in which the Debtor's has
14  dealt in this case all along, and that is hiding the ball.
15  She files an opposition.  She files it a week before this
16  hearing.  Obviously she found out someplace about this
17  motion.  She discloses nothing in the opposition.  There's
18  no declaration by her as to when she found out about this.
19  This is a critical motion for her husband, and there's no
20  declaration as to when she received notice.  She never
21  filed any special request for special notice in this case,
22  and the cases she cites --

23                  THE COURT: Okay.  Just let me stop you a second.
24  The cause of action belongs to the maker of the note, the
25  obligee under the note.  They're joint obligees under this

26

1 | note.

2 |         MR. LINCHEY: Correct, Your Honor.

3 |         THE COURT:  The cause of action relates to that.
4 | It's a community property asset.  The Trustee has as
5 | property of the estate both spouses' interest in this cause
6 | of action arising under the note.  That's very clear, as
7 | with the real property.  The question I have here actually
8 | has to do with this eviction.  How are the Marshals -- what
9 | are the Marshals going to do if they evict Mr. Hyler but
10 | not Mrs. Hyler.

11 |         MR. LINCHEY: They will take custody of Mr. Hyler
12 | and remove him from the premises, Your Honor.

13 |         THE COURT: Just him personally.

14 |         MR. LINCHEY: Just him personally.  It was a
15 | subject of the discussions.  We understand and IGL
16 | understands that the gate may open ten minutes later and he
17 | may go back on the property.  But at that point, it's IGL's
18 | problem, not the Trustee's and not the estate's.  We
19 | understand that there's a practical issue that may arise
20 | from IGL.  They're aware of it, and it's their issue.

21 |         THE COURT: Okay.  Anything else?

22 |         MR. ISOLA: Just to clarify, so the hearing on my
23 | motion to withdraw as counsel is put over to a week from
24 | today, Friday, June 8 at 9:30?

25 |         THE COURT: That's fine, if that's what you want

27

1   to do.   That's fine.   Okay.   Now hold on just a second.
2   Let me look at one more thing.
3           (Pause.)
4           MR. DIOLI: Your Honor?
5           THE COURT: Hold on just a second, please.   I just
6   want to read one paragraph and then I'll get back to you
7   right away.
8           (Pause.)
9           Yes.
10          MR. DIOLI: I would just say in response to the
11  Trustee's comments about Ms. Hyler that my understanding is
12  that she has not been kept apprised of the proceedings by
13  the Debtor, and that she found out some time late last week
14  of what was going to be happening today, and decided based
15  on a call to my office that she would need to file at least
16  some sort of an objection in order to give her additional
17  time to make a determination or investigation about what
18  her rights are and what she can and can't do.   Our
19  objection was simply based on notice, and I don't think the
20  Court's decided what its ruling is as to that.   She is a
21  party in interest.   Her standing rights are being affected,
22  and I don't think there's any dispute that she didn't get
23  proper notice by the Trustee of this hearing.
24          THE COURT: Okay.   Here's what I will do.   We'll
25  have a hearing on -- unless IGL is not able to go ahead on

28

1   that date, and you should contact them and set up a phone
2   conference immediately --

3           MR. LINCHEY: Correct, Your Honor.

4           THE COURT:  -- if that is not the case, and we'll
5   have to reschedule -- we'll hold a hearing on Tuesday, June
6   12th at 10:00 o'clock.

7           The Court makes the following -- the Court makes
8   the following rulings and the proceeding on June 12th will
9   be for the purposes as stated below, as I'm about to state.

10          Subject to the conditions imposed upon this
11  settlement, which I'll discuss in a few minutes, I
12  determine that this settlement is an appropriate one for
13  the estate to make under A & C Properties, the four factors
14  of A & C Properties.  First, and most important, the
15  settlement is reasonable with respect to the merits of the
16  action as they exist under the very unusual and important
17  circumstances here.  The action has practical value to the
18  estate primarily as a means of recovering payments already
19  made.  The settlement gives the estate a very high yield, a
20  small discount on the claim for recovery of payments made,
21  and is very much reasonable in that regard.

22          The action could be also used, if successful, to
23  avoid the lien on the property.  That part of the action is
24  not of very much value to the estate because the property
25  is not likely to be sold or likely to be refinanced, as

1   shown by the history of the efforts to do both of those
2   over the last year and a half. So again, we have to,
3   although there's not much of a discount -- there's a small
4   discount on the cash aspect; the Trustee is giving up the
5   lien avoidance aspect -- to do so, of course, the estate or
6   Debtor would have to tender the principal balance back or
7   it's likely the Court would require that. And the Trustee
8   is giving up more in that regard, but that part of the
9   action is just not of practical value under the
10  circumstances.

11          The other factors are the difficulty of
12  recovering from IGL. There's been no showing that there's
13  any particular difficulty in recovering if the Trustee went
14  to judgment. So that factor does not particularly support
15  the settlement. The complexity of litigation and delay
16  supports the settlement very much because there would be
17  expense -- there would be an administrative expense of the
18  estate in going forward with this, and the delay might
19  result in relief from stay being granted, which would
20  mainly I think change the leverage in the settlement. So
21  there is that factor -- that factor favors settlement. And
22  delay would decrease the settlement value of this lawsuit
23  if during that period any other secured creditors got
24  relief from stay.

25          And then the interest of creditors, they call it

1   the paramount interest of creditors, well, the interest of
2   creditors at this point is really administrative expenses.
3   The case is administratively insolvent at this point.
4   Looking at it in a real scenario, it's the administrative
5   creditors' money who's on the line, and getting some cash
6   from this very much favors the group who would benefit from
7   that, and there's been no objection from that quarter that
8   this is being settled for too little, even though it would
9   still leave the estate likely administratively insolvent.

10          Now, I do think some conditions are necessary.
11  Number one, as I said earlier, the Debtor has to be given
12  the opportunity to overbid, because there are some
13  interests of the Debtor in this property and the estate is
14  as well served by getting money from the Debtor as from
15  IGL, provided that there's also -- the estate washes its
16  hands of all aspects of this lawsuit and the property, and
17  they get cash.

18          So we're going to have a hearing on June 12th,
19  which will be basically the overbid time, the time for
20  conducting overbids between -- by the Debtor and then if
21  IGL wants to respond, by IGL.

22          In addition, I think the Debtor should be given
23  an opportunity to show at the same time that this
24  settlement should not be approved because it's
25  inappropriate to require the Debtor to give up possession

1  of the property. And it's probably also appropriate to
2  give the Debtor's wife a chance to respond to this
3  settlement. I do think she's a party in interest. I don't
4  think she has an interest different from the Debtor,
5  practically speaking, because these assets are community
6  assets, but if she hasn't been given an opportunity, formal
7  opportunity to do so, I will give her more time. And to
8  that end, I'm going to do the following:

9          I will let the Debtor's wife file an opposition
10 to this by a date that I'll pick in a few seconds, and I'm
11 going to basically treat this as a motion for turnover of
12 possession by the Debtor, set for hearing on June 12th, and
13 the Debtor can respond to that. I think that's what you
14 asked for, Mr. Isola. So that will be, if the Debtor is --
15 if the Debtor does not out -- well, we'll decide what order
16 we're going to go in.

17         MR. LINCHEY: Your Honor, I think you misspoke.
18 You said -- "turnover motion by the trustee" --

19         THE COURT: Turnover motion by the trustee, yes.
20         MR. LINCHEY: Thank you.

21         THE COURT: Thank you for correcting that. And I
22 think we probably ought to have the determination of that
23 before we decide whether there's an overbid. I think
24 that's the only fair thing to do. So we'll have that on
25 the 12th, and the current papers will just be considered and

1   the previous papers that you made for turnover will be
2   considered the basis for that motion.  Okay?  But then the
3   Debtor gets a chance to respond and say, why shouldn't they
4   be required to turn over possession.  It is property of the
5   estate.  The estate has made the determination that the
6   interest of the estate could be maximized by removing the
7   Debtor before this -- and then entering into this broad
8   settlement with IGL.

9              Now, if we're going to have the hearing on the
10  12th, I'm inclined to give the Debtor and the Debtor's wife
11  until I guess next Thursday to file opposition.  Is
12  that -- I want to be able to read it before the weekend and
13  have the Trustee read it before the weekend, so close of
14  business on Thursday, the 7th.  Is that schedule suitable to
15  you folks?

16             MR. LINCHEY: That's fine, Your Honor.

17             MR. ISOLA: That seems to be okay, Your Honor.

18             MR. DIOLI: That's fine, Your Honor.

19             THE COURT: Okay.  All right.  And so what I'm
20  doing then basically is, for all purposes, shortening time
21  on this -- all matters related to this settlement and to
22  the related relief, to have a hearing on the 12th with the
23  Debtor and Debtor's wife to respond by June 7th.

24             Now, if -- again, if the Trustee prevails in this
25  over the opposition -- I'm also making the determination at

1  this point subject to consideration of the wife's
2  objections only and subject only to that portion of the
3  order which deals with turnover of possession. Provided
4  those are resolved, then neither of those derail the
5  settlement. Other than that, I would approve this
6  settlement. I just want everybody to know that, so that
7  unless you're able to prevail on either of those two
8  issues, the settlement will be approved and you will have
9  to overbid. If you prevail on those two, then I think IGL
10 probably walks away, and then you don't have a settlement.

11         MR. ISOLA: So the two provisions you mentioned,
12 Your Honor, were the turnover of possession and the notice
13 issue as to the spouse?

14         THE COURT: Well, it's not the notice issue. I'm
15 dealing with the notice issue by saying I'm shortening time
16 to the notice already given, plus giving the Debtor's wife
17 more time to respond as a party in interest.

18         MR. ISOLA: When you say "respond," Your Honor,
19 that's to any aspect of the proposed settlement.

20         THE COURT: Anything you want to object to, yes.
21 Okay? And because it's a part of the settlement, that it's
22 clearly a part of the settlement, that the Debtor has to
23 turn over -- has to get out of the property, then I think
24 the Debtor gets to raise that separately, and I think --
25 I'm basically saying that a hearing on June 12th is adequate

34

1   time provided -- and I'm telling the Debtor you have to

2   respond to that now -- I'm just saying that just because it

3   involves the removal of possession, it is sort of a

4   separate motion, but you've had some notice of it now and I

5   think giving you this additional time plus till next

6   Thursday to respond is adequate.  And I so shortened

7   notice -- I granted an order shortening time to the extent

8   necessary to effect that.

9           MR. LINCHEY: Thank you, Your Honor.

10          MR. ISOLA: Your Honor, one final question

11  about --

12          THE COURT: Okay.  I'm trying to -- now if there

13  any more questions, what I'm trying to do is let you know

14  where you stand, what issues are to be addressed, and what

15  order we're going to proceed in on the 12th.

16          MR. ISOLA: At the start of the hearing, you

17  mentioned payment within 48 hours or something to that

18  effect, if Mr. Hyler were the successful bidder.

19          THE COURT: Yes.

20          MR. ISOLA: Is that still how the procedure would

21  be if IGL --

22          THE COURT: My inclination is to say yes, unless

23  you -- I'll address it if you want to talk about it, that's

24  fine, but it's not going to be a long period of time.  I do

25  think there's nothing wrong with 48 hours.  And what I

1 would do basically is just to approve the next best offer
2 as a backup in case that condition isn't fulfilled. And I
3 would say, you bid -- well, 180,000 and IGL bids 179,000 --
4 these are totally made-up numbers -- and you didn't
5 perform, well then it would be -- the settlement would
6 otherwise be approved. That's why I think we have to go
7 through the process of deciding whether the settlement
8 could be approved before requiring you to overbid. That's
9 one of the reasons why we had to determine whether the
10 settlement is otherwise fair.

11          MR. LINCHEY: Your Honor, the only issue that the
12 Trustee has with that, and we would request that the Debtor
13 make some kind of a showing this next week that he has the
14 actual ability to perform, is that --

15          THE COURT: You don't want them bidding against --
16          MR. LINCHEY: IGL doesn't want to be sandbagged,
17 Your Honor, I think is the issue, and IGL is not going to
18 want to bid against --

19          THE COURT: Okay. Let's do this. I think that's
20 true. I think they should be able to -- well, you
21 basically are willing to take the 175 unless they overbid
22 and perform.

23          MR. LINCHEY: Correct, Your Honor. And show that
24 they can perform.

25          THE COURT: Well, you can have it either way, but,

 1  you know, it seems to me that you're willing, except for
 2  their objection, to take 175. So unless they -- unless
 3  they actually -- if they are the high bidders, and unless
 4  they complete their -- well, you don't want them to force
 5  IGL up, yeah, okay.

 6          MR. LINCHEY: Yeah. The problem is, forcing IGL
 7  up. The other thing is that if Mr. Hyler is the high
 8  bidder, I don't think we can bind IGL to a backup under
 9  this agreement or any higher backup that they gave. I
10  think it's up to them at that point as to whether they want
11  to be a backup if they're not the successful bidder.

12          THE COURT: No, you'd be merely authorized.

13          MR. LINCHEY: Right. Correct. And we would not
14  want to lose this if in fact IGL is only bidding against
15  air. And that's why we would like the Debtor be required
16  to show --

17          THE COURT: Well, I think you should get proof
18  then of say -- what do you want the increments to be?

19          MR. LINCHEY: Five thousand, Your Honor.

20          THE COURT: Any problem with that?

21          MR. ISOLA: We would ask for something less,
22  something in the one thousand to three thousand range.

23          THE COURT: Okay. Why don't we do the following?
24  Before -- by the time we get here on the 12th, they have to
25  prove that they -- I'll allow the initial overbid to be

37

1  176, okay -- you have to prove that you have, you know,

2  176.  And how do you want to do that?

3          MR. LINCHEY: Well, what we've been requesting,

4  Your Honor, was a cashier's check that he could tender to

5  the Trustee as a deposit to bid in these circumstances.

6  He's told us this morning that he can have it within 30

7  minutes of this morning.  I don't know why he can't have it

8  within the next week.

9          THE COURT: I'm going to require a showing that

10  you have $176,000.  So is there any problem?  I mean

11  there's a little bit of cost in getting the check, but

12  other than that, is there any real problem with this?

13          MR. ISOLA: I guess the issue is, to your

14  satisfaction or to the Trustee's satisfaction that he has

15  the 176?  They've asked about a cashier's check --

16          THE COURT: Well, what's I'm saying, a cashier's

17  check is good satisfaction, but the bank has set is aside

18  in a promise to pay.

19          MR. ISOLA: So would that be simply showing them a

20  cashier's check for 176 or physically letting them take

21  possession of that?

22          THE COURT: No, I think you just bring it to

23  court.  They don't take it.

24          MR. ISOLA: Okay.  Right, so that --

25          THE COURT: But you have to have the funds to get

38

1  the check.

2          MR. ISOLA: Correct.  So if he shows up on --

3          THE COURT: With a check.

4          MR. ISOLA: -- July 12, 10:00 a.m., right here,

5  with a cashier's check for 176, that's sufficient proof to

6  you and to them that he has the funds, and depending upon

7  the outcome of the actual successful bid, he would then

8  have 48 hours to get whatever that sum is paid.

9          MR. LINCHEY: Well, Your Honor, if he shows up

10  with the cashier's check and he's the successful bidder, he

11  should tender that cashier's check to the Trustee and have

12  48 hours to pay the balance.

13          THE COURT: To pay the balance.  And you will not

14  cash -- deposit that check --

15          MR. LINCHEY: Until all the funds are received.

16          THE COURT: Right.  But we will first determine

17  whether -- these other two issues before you do it, so if

18  it winds up that you don't have the cashier's check, okay,

19  and we determine that these two other obstacles to the

20  settlement are, you know, can be overcome, then the

21  settlement will be approved at 175 from IGL.  If you win on

22  those first two issues, then the settlement isn't approved.

23  If you lose on those first two issues and come with a

24  check, then IGL will have to overbid.  Now what kind of

25  assurance have you obtained from IGL?

39

1          MR. LINCHEY: In terms of being able to perform,
2  Your Honor?

3          THE COURT: Yes.

4          MR. LINCHEY: We haven't obtained any assurance
5  yet, but we don't believe that there's any problem there.
6  If the Court requires, we can have IGL show up with the
7  same type of check.

8          MR. ISOLA: That would seem to make sense.  The
9  protection about not bidding against oneself, if the funds
10 aren't there, applies equally to Mr. Hyler as it does --

11         THE COURT: Yeah.  Well, they only have to bring
12 175, because that's what they bid.  And then, you know,
13 we'll give you a reasonable period of time to come up with
14 the second check.  Okay?  All right.  Are there any other
15 questions about process, about procedure?

16         MR. LINCHEY: No, Your Honor.

17         MR. ISOLA: So will an order to that extent you
18 just described be uploaded or available today, Monday?

19         THE COURT: I'll get it out Monday.

20         MR. ISOLA: Okay.

21         THE COURT: Just setting forth what happens here.

22         MR. ISOLA: Okay.  Thank you, Your honor.

23         THE COURT: Okay.  Anything else?

24         MR. LINCHEY: Yes, Your Honor, there was the
25 Trustee's motion to convert on at the same time.  I don't

1  know if Your Honor wants to kick that over till the 12th
2  also or not.

3          THE COURT: The only thing I can think of -- I
4  mean, you know, I understand why you want to convert the
5  case because at some point you need to get out from these
6  U.S. Trustee fees. I guess -- all you need to do is have
7  the case converted before you receive the funds, right,
8  because you're not at the end of the quarter yet.

9          MR. LINCHEY: Right. No, in terms of the U.S.
10  Trustee's fees, that's correct, Your Honor. In terms of
11  the overall work in this case --

12          THE COURT: No, I guess what I'm wondering is, is
13  there any reason why it can't be continued to the 12th?

14          MR. LINCHEY: No, Your Honor, nothing -- nothing
15  meaningful.

16          THE COURT: Okay. Now does the Debtor have --
17  under this regime, does the Debtor have any -- if you have
18  any -- again, I'm going to -- to the extent -- I don't
19  think there was any -- I don't think a motion to convert
20  which is addressed to the Debtor and all creditors is a 28-
21  day motion. I think it's a 20-day motion, but in any case,
22  is there something further that you want to say about
23  conversion, given the way the rest of this is going?

24          MR. ISOLA: We may want to, Your Honor.

25          THE COURT: Okay. Well, you have the same date,

41

1   the 7th, to do that?

2              MR. ISOLA: That's fine.

3              THE COURT: Okay.

4              MR. LINCHEY: One last matter, Your Honor, the

5   status conference in the IGL adversary proceeding I believe

6   was also set for this morning, and we'd request that that

7   be continued to the 12th.

8              THE COURT: Continue that to the 12th also, yes.

9   That makes sense.  Okay.  Anybody have anything else?

10             MR. LINCHEY: No, Your Honor.

11             THE COURT: Okay.  I will see you on the 12th.

12             MR. ISOLA: Thank you, Your Honor.

13             MR. LINCHEY: Thank you, Your Honor.

14         (Whereupon, the proceedings are concluded at 10:55

15   a.m.)

16

17

18

19

20

21

22

23

24

25

42

1
2
3
4
5                       CERTIFICATE OF TRANSCRIBER
6
7
8             I certify that the foregoing is a correct
9    transcript from the digital sound recording of the
10   proceedings in the above-entitled matter.
11
12
13   DATED:   June 9, 2007
14
15                       By: /S/ Jo McCall
16
17
18
19
20
21
22
23
24
25

**Entered on Docket**
**June 19, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1

2          **Signed and Filed: June 15, 2007**

3

4          _____
           **THOMAS E. CARLSON**
5          **U.S. Bankruptcy Judge**

6          _____

7

8                    **UNITED STATES BANKRUPTCY COURT**

9               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  In re:                              )  Case No. 04-32952 TEC 11
                                        )
12  FLETCHER HARTWELL HYLER, aka        )
    BUD H. HYLER,                       )  Chapter 11
13                                      )
                                        )
14                                      )
                         Debtor.        )
15                                      )
                                        )
16  FLETCHER HARTWELL HYLER and         )
    SHERYL ROOT HYLER,                  )  Adv. Proc. No. 06-3164 TC
17                                      )
                                        )
18                       Plaintiffs,    )
                                        )
19       vs.                            )
                                        )
20  INVESTMENT GRADE LOANS, INC.,       )
    et al.,                             )
21                                      )
                                        )
22                       Defendants.    )
                                        )
23

24
              **ORDER TRANSFERRING ACTION TO DISTRICT COURT AND DIRECTING**
25                     **SUBSTITUTION OF PARTIES PLAINTIFF**

26       The above-entitled action is one that could have been filed in

27  federal court under either federal question or bankruptcy

28  jurisdiction.  It was filed in the bankruptcy court.  Because

    trustee was the plaintiff, and the action could have an effect on

                                  -1-

1

2                          Court Service List

3
    Daniel M. Linchey, Esq.
4   Goldberg, Stinnett, Meyers and Davis
    44 Montgomery Street, Suite 2900
5   San Francisco, CA 94104

6   Michael E. Stone, Esq.
    Law Offices of Michael E. Stone
7   3425 S Bascom Ave. #I
    Campbell, CA 95008
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28