# EXHIBIT "A"

# COMPROMISE, SETTLEMENT AND MUTUAL
# RELEASE AGREEMENT

WHEREAS, the parties to this Compromise, Settlement and Mutual Release Agreement (hereinafter this "Agreement") are FLETCHER HARTWELL HYLER and SHERYL ROOT HYLER (hereinafter collectively referred to as "HYLER "), and INVESTMENT GRADE LOANS, INC., LINCOLN TRUST COMPANY FBO DOUG PICKERING, CHERN S. LIN, FELICIA LIN, JANICE TEMPEY, ROY S. WOLF, THOMAS C. O'CONNELL, JR., JANICE K. O'GRADY, PENSCO TRUST COMPANY AS CUSTODIAN FBO JOHN A. SNYDER IRA, PENSCO TRUST COMPANY AS CUSTODIAN FBO PHIL AHLFELDT, IRA, and JOHN STEVENS (hereinafter collectively referred to as "IGL");

WHEREAS, a dispute has arisen between HYLER and IGL with respect to certain loans IGL made to HYLER that were secured by HYLERS' personal residence, located at 5070 Alpine Road, Portola Valley, CA 94028. More specifically, on or about February 19, 2004, IGL loaned HYLER the sum of \$1,232,500.00 secured with a deed of trust in 2nd position against HYLERS' personal residence. On or about March 17, 2004, IGL made an additional loan to HYLER in the sum of \$100,000.00 that was secured by a deed of trust in 3rd position against title to the same property. IGL'S loans to HYLER were junior to a 1st promissory note and deed of trust in the sum of \$4,205,700.00.

WHEREAS, soon after IGL made the above-described second and third loans to HYLER, a dispute arose between HYLER and IGL regarding the interest rate provisions of the loans. HYLER ceased making payments on the loans from IGL and contended that the IGL loans violate the provisions of the Truth In Lending Act, found at 15 U.S.C. Sec. 1601, et seq. (hereinafter the "the Dispute"). The foregoing facts and circumstances have resulted in HYLER filing an action that is currently pending in the United States District Court for the Northern District of California, identified as HYLER v. INVESTMENT GRADE LOANS, INC., Action No. 07-CV-03180 WHA, (hereinafter "the Action") The defendants deny the validity of the claims assert in the Action or that the HYLERS have any claims whatsoever.

WHEREAS, IGL commenced proceedings to foreclose its deed of trust in 2nd position, and HYLER filed a motion for a restraining order to prevent the Trustee's Sale from being held. On August 1, 2007, HYLER'S Order to Show Cause why the Court should not issue the requested Restraining Order was heard. The Court, the Hon. William H. Alsup presided over the hearing of HYLERS' motion. The Court granted the requested restraining order subject to the HYLERs posting a bond in the sum of \$835,000 on or before noon on August 15, 2007. The Court further ordered that if the full bond were not posted with the Clerk of the Court by the date ordered, IGL could proceed that day with its Trustee's Sale. The HYLERS were further ordered to prepare and file a motion for Summary Judgment in the Action.

WHEREAS, HYLER did not post the bond as required and on August 16, 2007, IGL concluded a Trustee's Sale of HYLER'S residence. IGL was the successful bidder at the sale,

and purchased the property for the amount of the unpaid balance on its note against title to the property, in the sum of $1,902,497.43. IGL claims it has expended $2.1 million to date in regard to its transactions with HYLER. IGL is now in the process of instituting eviction proceedings to remove HYLER from the property

WHEREAS, HYLER contests the validity of the foreclosure, the right of IGL to institute eviction proceedings and all other rights IGL has contended that it has in the property and /or against HYLER. .

WHEREAS, the parties wish to resolve all their disputes and agree upon a settlement of any and all matters in dispute amongst them and to cause a dismissal with prejudice of the Action;

WHEREAS, this Agreement made by the above-named parties is a full, complete and final Compromise, Settlement and Mutual Release, whereby the above-mentioned parties hereby extinguish their mutual rights and claims arising from any and all disputes and differences between them and that each has or may have against each other, in any way relating to their Dispute and the Action.

NOW THEREFORE, in consideration of the mutual covenants herein contained and in settlement of all past and present disputes, monetary or otherwise, in any way relating to their Dispute and the Action, and effective as the date of signature of ths Agreement (hereinafter "the effective date"), the parties agree as follows:

1.  Each of the above-mentioned parties, on behalf of himself/herself, his/her descendants, ancestors, dependents, heirs, executors, administrators, representatives, attorneys agents and assigns releases and absolutely and forever discharges the other party and his/her descendants, ancestors, dependents, heirs, executors, administrators, representatives, attorneys, agents and assigns from any and all rights, claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, which they now have, own, or hold, or at any time heretofore ever had, owned, or held or could, shall or may hereafter have, own, or hold against any other party based upon or arising out of any matter, cause, fact, thing, act, or omission whatsoever occurring or existing at any time to and including the date hereof pertaining to their Dispute, the Action, and/or HYLERS' personal residence.

2.  Immediately upon signing this Agreement, HYLER, shall cause their attorney to file a dismissal of the Action, with prejudice.

3.  In consideration for the dismissal of the action, IGL grants HYLER a 60 day option from August 21, 2007 to:

    a.  purchase the property back from IGL for the sum of $2.1 million; alternatively,

    b. have the Trustee's sale rescinded and allow HYLER to pay off IGL'S loans for the sum of $2.1 million.

4. HYLER shall take back title to the property subject to the balance of the first mortgage and any outstanding and unpaid property taxes. In addition, the costs of the transaction, including, but not necessarily limited to recording fees, escrow fees, transfer taxes, etc., are to be split equally between the parties.

5. As a condition precedent to the exercise of the option, HYLER shall pay a nonrefundable deposit to IGL in the sum of $200,000.00, payable in the form of an initial sum of $100,000.00 upon the effective date of this agreement and shall pay IGL an additional sum of $100,000.00 on or before the 40th day after the effective date. If the option is exercised, the said sums will be credited against the purchase price

6. In the event HYLER fails to perform any of the terms or conditions of this agreement or fails to make any payments required by this agreement on the due date (it being agreed that there is no "grace period") for any payment, HYLER shall immediately relinquish possession of the property to IGL within ten (10) days of any failure to perform hereunder whether it be payment of one of the deposits or the full purchase price. Prior to the escrow closing, HYLER shall give IGL written notice whether or not the title is to be transferred by grant deed or rescission of the foreclosure sale and deed.

4. Each party covenants and agrees never to commence, assist in any way, prosecute, or permit or cause to be commenced or prosecuted, any action at law, suit in equity, or any other proceeding based upon any claims, demand, cause of action, obligation, damage or liability of any nature whatsoever, whether known or unknown, suspected or unsuspected, or any claim which they may have, or claim to have, against each other and/or each of their respective agents, officers, directors, assigns, employees, heirs, legal representatives, or administrators, directly or indirectly relating to the claims released above.

5. Except as provided for below in the enforcement provisions of this Agreement, the parties shall bear their own attorney's fees and costs associated with their Dispute and the Action.

6. This settlement is a compromise of the above-mentioned disputed claim and shall never be treated as an admission of liability by any party hereto for any purpose.

7. The parties hereby acknowledge the provisions of Section 1542 of the California Civil Code, which provides that:

    "A general release does not extend to claims which the creditor

does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Notwithstanding the provisions of that California Civil Code section, this Compromise, Settlement and Mutual Release Agreement is intended to serve as a release of all injuries, damages, or losses to HYLER and IGL and either of their persons and property, real or personal, known or unknown, foreseen or unforeseen, patent or latent, which either may have or claim against the other arising from or related to the Dispute or Action. HYLER and IGL understand and acknowledge the significance and consequence of such specific waiver of Section 1542 and hereby assume full responsibility for any injuries, damages or losses that they may incur arising out of or in connection with any acts, dealings or relationships between them that are in any way associated with their Dispute and the Action.

8. The parties have read and understand, and been advised by their respective attorneys (or if signed without the advice of an attorney the right to such advice is expressly and knowingly waived) to sign this Compromise, Settlement and Mutual Release Agreement and understand that it constitutes their complete and final understanding.

9. All parties acknowledge and warrant that they have full and complete authority to sign this Agreement on behalf of the individuals or specific entities named below.

10. All parties herein agree that they will execute and provide, at the request of any other party, any and all such other documents or other written agreements as may be reasonably necessary to effectuate the purposes of this Agreement.

11. This Agreement may be amended at any time and from time to time, but any amendment must be in writing and signed by each person who is then a party.

12. This Agreement shall be binding on and shall inure to the benefit of the respective successors, assignees and personal representatives of each of the parties, except to the extent of any contrary provision in this Agreement.

13. If any term, provision, covenant or condition of this Agreement is held by a Court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

14. The parties hereby acknowledge and agree that this Agreement, and the settlement between them described in this Agreement shall be judicially enforceable, and that the Court shall retain jurisdiction over this action for purposes of enforcing its terms, as necessary.

15. Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by a single arbitrator, mutually agreeable to the parties, in an arbitration held in accordance with the rules of California Code of Civil Procedure §1280, et seq. If the parties cannot agree upon an arbitrator, the Presiding Judge of the United States District Court

for the Northern District of California in which this action is filed, on petition of a party to this Agreement, shall appoint a neutral arbitrator pursuant to California Code of Civil Procedure §1281.6. Judgment upon the award rendered by the arbitrator may be entered into by any court having jurisdiction thereof. The cost of such arbitration, including attorney's fees, shall be borne by the losing party or in such proportions as the arbitrator shall determine.

16. This Agreement may be executed in any number of counterparts with the same effect as if all the parties hereto were to have signed the same document. All counterparts shall be construed together and shall constitute one Compromise, Settlement and Mutual Release Agreement.

17. This Agreement contains the entire agreement of the parties relating to their rights and obligations assumed in the Agreement. Any oral representations or modifications concerning this Agreement shall be of no force or effect unless contained in a subsequent written modification all parties have signed.

18. This Agreement was drafted jointly by all parties and their respective counsel. Therefore, in interpretation and/or construction of this Agreement, no ambiguity shall be resolved against any party by virtue of its participation in the drafting of the Agreement.

Investment Grade Loans, Inc.

_____     By: _____
Fletcher Hartwell Hyler          Andrew Lewis, President

_____          _____
Sheryl Root Hyler                Andrew Lewis, as Authorized Agent
                                 for Lincoln Trust Company FBO
                                 Doug Pickering, Chern S.Llin, Felicia
                                 Lin, Janice Tempey, Roy S. Wolf,
                                 Thomas C. O'Connell, Jr., Janice K.
                                 O'Grady, Pensco Trust Company As
                                 Custodian FBO John A. Snyder IRA,
                                 Pensco Trust Company As Custodian
                                 FBP Phil Ahlfeldt, IRA, and John
                                 Stevens

APPROVED AS TO FORM:

JENKINS MULLIGAN & GABRIEL L.L.P.

By: _____
Daniel J. Mulligan, Attorney for
Fletcher H. Hyler and Sheryl
Root Hyler

APPROVED AS TO FORM:

LAW OFFICE OF MICHAEL E. STONE

By: _____
Michael E. Stone, Attorney for
Investment Grade Loans, Inc.