1  Michael E. Stone, Esq. State Bar No. 46016
   Leo B. Siegel, State Bar No. 116841
2  LAW OFFICE OF MICHAEL E. STONE
   3425 S. Bascom Avenue, Suite I
3  Campbell, California 95008
   408/377-9899 Telephone
4  408/377-5270 Facsimile

5  Attorney for Secured Creditors and
   Trustee INVESTMENT GRADE LOANS, ET AL
6

7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                     OAKLAND DIVISION

11

12  FLETCHER HARTWELL HYLER and        CASE NO.: CV 07-3364 SBA
    SHERYL ROOT HYLER,
13                                     DEFENDANTS' CASE
              Plaintiffs,              MANAGEMENT CONFERENCE
14                                     STATEMENT

15      vs.                            Hearing Date: January 23, 2008
                                       Time:  3:30 p.m.
16  INVESTMENT GRADE LOANS, INC., et al. Place:  U.S. District Court
                                                1301 Clay St., Ctrm 3
17            Defendants.                       Oakland, CA 94612
                                       Judge: Hon. Saundra B. Armstrong
18  _____/

19

20

21
            Defendants Investment Grade Loans, Inc.; Lincoln Trust Company Custodian FBO Doug
22
    Pickering IRA; Chern S. Lin; Felicia Lin; Janice Tempey; Ray S. Wolf; Thomas C. O'Connell Jr.;
23
    Janice K. O'Grady; Pensco Trust Company, Custodian FBO John A. Snyder IRA; Pensco Trust
24
    Company, Custodian FBO Phil Ahlfeldt; and John Stevens, (collectively referred to herein as "IGL"),
25
    by their attorneys, Law Office of Michael E. Stone, Michael E. Stone, and Leo B. Siegel, respectfully
26
    submit their Case Management Statement as follows:
27
    / / / / /
28
    / / / / /

                                    1
─────────────────────────────────────────────────────
    DEFENDANTS IGL, ET AL.'S CASE MANAGEMENT STATEMENT

1    <u>Meet and Confer</u>:

2    The parties have met and conferred regarding the filing of their Case Management Statements,

3    and determined that separate statements are more practical under the circumstances. In particular,

4    Defendants will be attaching exhibits to their statement, and then asking the Court to dismiss this

5    action *sua sponte*, as it was erroneously transferred from the United States Bankruptcy Court for the

6    Northern District of California, San Francisco Division.

7    1. <u>Jurisdiction and Service</u>: This action has been transferred to this Court from the United

8    States Bankruptcy Court for the Northern District of California, San Francisco Division. The case

9    arose as an action under, and the Court has subject matter jurisdiction over the case pursuant to the

10    Federal Truth In Lending Act (hereinafter "TILA"), found at 15 U.S.C. Sec. 1601, et seq.

11    2. <u>Facts</u>: On October 20, 2004, Plaintiffs filed a Chapter 11 proceeding under the U.S.

12    Bankruptcy Act. The bankruptcy proceeding was filed to stop IGL from going forward with a

13    Trustee's Sale of Plaintiff's real property located at 5070 Alpine Road, Portola Valley, California

14    (hereinafter "the Property"). The Property consists of an 8.5 acre estate that Plaintiffs have

15    represented to be worth $11,000,000.00. Plaintiffs have thereafter remained in, and continue to

16    remain in possession of the Property **without paying any of their mortgage obligations for more**

17    **than 3 years**.

18    The facts underlying that Trustee's Sale are briefly stated as follows: On February 19, 2004,

19    Plaintiffs executed a note and deed of trust in favor of the non-entity defendants, with Investment

20    Grade Loans, Inc., ("IGL") as Trustee. The principal amount of the loan was the sum of

21    $1,232,500.00, which bore interest at 16% per annum, which was secured by a 2nd deed of trust.

22    Defendants subsequently gave Plaintiffs an additional loan (secured by a 3rd deed of trust) in the sum

23    of $100,000.00. The interest alone on the Plaintiffs' loans from IGL accrues each month at the sum

24    of $16,433.33. The principal amount of a senior loan ahead of Plaintiffs' is the sum of $4,205,700.00.

25    There is currently over $1,000,000.00 in accrued and unpaid interest on that senior loan, according

26    to a notice of Default the senior lender has served on Plaintiffs. That debt increases by an additional

27    sum of approximately $36,908.03 per month. Accordingly, the total debt service on the Property that

28    has accrued and continues to accrue as a loss to Plaintiffs **each month** that Defendants remain in

1  possession of the Property is the sum of approximately **$53,341.36**.  Furthermore, Defendants

2  remaining in possession of the Property jeopardizes Plaintiff's ability to recover its damages incurred

3  on Defendants' obligation to them, because the senior loan is set to be sold at a trustee's sale in early

4  February of 2008, unless Plaintiff cures the Defendants' default of over $1,000,000.00.

5          Almost three years after the bankruptcy case was filed, on or about October 13, 2006, Andrea

6  Wirum, the Bankruptcy Trustee filed an Adversary Action alleging that the Defendants' loan violated

7  TILA.  The bankruptcy case proceeded until the Trustee evidently saw no point in trying to save the

8  overencumbered Property for the Plaintiffs' bankruptcy estate, and abandoned it, and the bankruptcy

9  action was terminated.  The Plaintiffs then sought to, and did indeed, purchase from the Trustee for

10  the sum of $200,000.00 the right to continue the Adversary Action under TILA in the District Court.

11          On June 27, 2007, the TILA case was transferred to the United States District Court for the

12  Northern District of California.  The Case was filed in the Court's San Francisco Division as Case

13  Number 07 CV-03180 WHA.  Initially unbeknownst to Defendants, the Clerk of the Bankruptcy

14  Court had, in addition, erroneously transferred the TILA case to this, the Oakland Division of the

15  District Court, as well, so that there were duplicate transfers and cases filed in both the San Francisco

16  Division and under this present case number in the Oakland Division.  This case is literally and

17  entirely duplicative of the San Francisco TILA case.  It's the same exact case, that was simply and

18  erroneously filed in both of the Court's Divisions.  Defendants have no idea why the duplicate transfer

19  of this case was effected, and the Clerk of the Bankruptcy Court has explained it as an administrative

20  error.

21          Plaintiffs hired attorney Daniel J. Mulligan, from the firm Jenkins, Mulligan & Gabriel, LLP

22  to represent them in the San Francisco TILA action.  Faced at that time with Defendants' imminent

23  foreclosure proceedings, Plaintiffs moved the Hon. William H. Alsup in the San Francisco case for

24  a Temporary Restraining Order and Preliminary Injunction, which proceedings were intended to stay

25  the Defendants' Trustee Sale proceedings pending Plaintiffs filing a Motion for Summary Judgment.

26  On August 1, 2007, Judge Alsup granted Plaintiffs' TRO, but conditioned it upon them posting a

27  bond in the sum of $835,000 on or before August 15, 2007, at noon, and on Plaintiffs filing their

28  motion for summary judgment by September 6, 2007, a little more than 30 days after the hearing on

1  the TRO.  When Plaintiffs failed to post the required bond, Defendants proceeded to continue with

2  their Trustee's Sale, pursuant to Judge Alsup's Order at the TRO proceedings.

3      The foreclosure sale was duly completed, but rather than IGL recording the Trustee's Deed,

4  the parties negotiated a Compromise, Settlement and Mutual Release Agreement (hereinafter "the

5  Agreement") that was intended to result in a dismissal with prejudice of the San Francisco TILA case

6  (as that was the only one of the duplicative actions then being litigated), and any and all claims

7  between them.  A true and correct copy of the Agreement is attached to this Case Management

8  Statement as **Exhibit "A."**   The Agreement required Plaintiffs to pay Defendants the sum of

9  $200,000, divided between two installments, with the last one due on or before the expiration of 40

10 days after Plaintiffs signed the Agreement.  See, Exibit "A," at page 2, paragraph 5, at the top of page

11 3.  Provided they made the two installments totaling $200,000, Plaintiffs had 60 days within which

12 to finance either a repurchase of the Property from Defendants for $2.1 million, or to effect a

13 rescission of the Trustee Sale Proceedings, at their option.

14     Pursuant to the terms of the Agreement, at paragraph 2 on page 2, Plaintiffs' counsel caused

15 the Court to file a dismissal of the San Francisco TILA case, with prejudice.  A true and correct copy

16 of Judge Alsup's Order Dismissing Action is attached to this statement as **Exhibit "B."**  The Court

17 is requested to take Judicial Notice of the Order Dismissing Action, and the  fact that the San

18 Francisco TILA action has been dismissed **with prejudice, pursuant to the parties' Agreement**.

19     Plaintiffs failed to make the second installment against the $200,000 payment under the

20 Agreement, whereupon Defendants proceeded with an unlawful detainer action to recover possession

21 of the Property from Plaintiffs HYLER.  The Sheriff's completion of the eviction in that case is set

22 to go forward on January 15, 2008, by which time Plaintiffs will have managed to live in the

23 $11,000,000 property for over three (3) years without making any mortgage payments.[1]

24

25     [1] In addition, Plaintiffs have filed yet another action against Defendants in the San Mateo
26 County Superior Court, as Case No. CIV 468586, alleging causes of action for breach of contract and
   fraud.  They claim that Defendants breached the Agreement, by purportedly interfering with their
27 ability to obtain financing necessary to complete their purchase of the Property from Plaintiffs.  More
   specifically, Plaintiffs allege in that action that Defendants fraudulently told the mortgage brokers
28 from whom Plaintiffs were seeking financing, and a title company, that Plaintiffs no longer owned
   the Property (which, of course, was true, after the hammer fell at the Trustee's Sale of the Property).

1    When Plaintiff's counsel, Mr. Mulligan attempted to dismiss this action filed in the Oakland

2    Division of the Court, he found that the Clerk of the Court had no procedure for doing so, and was

3    reportedly told that he would have to move the Court to consolidate the two cases so that the Order

4    Dismissing Action would apply to both of them.  His attorney/client relationship with Plaintiffs then

5    broke down, apparently because Plaintiffs HYLER refused to authorize Mr. Mulligan to effect a

6    dismissal of this action whereupon he ceased acting as their attorney, and this case remained on the

7    Court's calendar.

8    On or about December 17, 2007, Plaintiffs hired their present counsel, Susan Bayerd, Esq.

9    She immediately filed a document entitled "Certificate of Counsel," a copy of which is attached to

10   this Case Management Statement as **Exhibit "C."**  The Court is requested to take Judicial Notice of

11   that Certificate.  She reports to the Court that this case was not until now prosecuted because:

12   "Plaintiffs [HYLER] were unaware that the Trustee in Bankruptcy, Andrea A. Wirnum (sic), had

13   transferred the case.  In fact, Plaintiffs discovered its existence only last week."  See, Certificate of

14   Counsel, at paragraph (c) on page 1, lines 25-27.  But a true and correct copy of the latest action

15   Plaintiffs filed in the San Mateo County Superior Court that is referred to more specifically in

16   Footnote Number 1 on page 4 of this Case Management Statement is attached as **Exhibit "D."**  The

17   Court is requested to take Judicial Notice of that Verified Complaint in that San Mateo County case.

18   Referring the Court to paragraph 3 at page 2 of that complaint, it appears that Plaintiffs HYLER refer

19   directly to the Compromise, Settlement and Mutual Release Agreement through which the San

20   Francisco TILA action was dismissed.  Referring again to that Agreement, **which Plaintiffs signed**

21   **on September 4, 2007**, it is unquestionable that Plaintiffs HYLER knew very well that the Trustee

22   in their Bankruptcy had caused their TILA claims to be transferred to the District Court.  So when

23   Plaintiffs counsel claims they were unaware that Ms. Wirum "had transferred the case," one wonders

24   what she means.  Is she simply representing that Plaintiffs were unaware of the duplicative filing of

25   their TILA case in this, the Oakland Division of the District Court, or is she representing that

26   Plaintiffs HYLER were totally unaware of the transfer of their TILA claims in any fashion to the

27   District Court (even the San Francisco Division).  Obviously, the second alternative is absolutely

28   false.  If the first alternative is to be given any credence, then it simply means this **duplicate** action

1  should be dismissed on the Court's own motion, which is exactly what Defendants request the Court

2  to do.

3      3.  <u>Legal Issues</u>: In light of the Compromise, Settlement and Mutual Release Agreement

4  between the parties with respect to the duplicate San Francisco TILA action, and Judge Alsup's

5  subsequent dismissal of that action with prejudice, it seems that the only legal issue before the Court

6  is whether or not this case should be dismissed, as well, on the Court's own motion.

7      4.  <u>Motions</u>: This case has just begun to be litigated, as it was presumed that Plaintiffs' former

8  counsel would dismiss it in light of the fact of the duplicate filing in the San Francisco Division, and

9  the full release agreement between the parties.

10      5.  <u>Amendment of Pleadings</u>: Defendants anticipate no amendment of the pleadings, and

11  indeed, any effort on Plaintiffs' part to seek leave to amend should be denied, after they fully released

12  their TILA claims against Defendants with prejudice.

13      6.  <u>Evidence Preservation</u>: No discovery or evidence preservation measures has yet been

14  undertaken, as it was presumed that Plaintiffs released Defendants from their TILA claims with

15  prejudice.

16      7.  <u>Disclosures</u>: No Fed. R. Civ. P. 26 disclosures has been made, as it was presumed that

17  Plaintiffs' former counsel, Mr. Mulligan would be successful in effecting a dismissal of this duplicate

18  action after Plaintiffs released Defendants from their TILA claims with prejudice.

19      8.  <u>Discovery</u>: No discovery has been taken yet.  It is not anticipated that any discovery will

20  be necessary to effect a dismissal of this case, as it ought to be dismissed on the Court's own motion.

21  Under the worst case scenario, the Court would require Defendants to file a Motion to Dismiss this

22  case to effect that result.

23      9.  <u>Class Actions</u>: Not applicable.

24      10.  <u>Related Cases</u>: This case is a duplicate filing of the case concurrently transferred to the

25  San Francisco Division of the Court, and filed there as Case No. 07-CV-03180 WHA.  Judge Alsup

26  has entered an Order Dismissing Action in that matter, pursuant to the parties' stipulation.

27      11.  <u>Relief</u>: Defendants have no counterclaim.  Plaintiffs no longer have any entitlement to any

28  relief, after the stipulation and dismissal of their TILA claims against Defendants with prejudice.

DEFENDANTS IGL, ET AL.'S CASE MANAGEMENT STATEMENT

12.    Settlement and ADR: Plaintiffs have already settled their TILA claims against Defendants and dismissed the duplicate, erroneously and concurrently filed action in the San Francisco Division of the Court, with prejudice.

13. Consent to Magistrate Judge For All Purposes: Defendants do not, at this time, consent to referral of this case to a Magistrate Judge for all purposes, as it is anticipated that the Court will dismiss this case *sua sponte*.

14. Other References: Not applicable at this time.

15. Narrowing of Issues: The only issue apparently before the Court is whether or not this action is duplicative of the San Francisco Division TILA case that has been dismissed with prejudice under a stipulation to a release of all claims.

16. Expedited Schedule: Inasmuch as this action was evidently transferred erroneously to this court, after it was also transferred from the United States Bankruptcy Court to the San Francisco Division, and litigated there to a Stipulation resulting in a Dismissal of Plaintiffs' TILA claims with prejudice, it is requested that the Court expedite the conclusion of this case the maximum amount possible, and specifically by dismissing it *sua sponte*.

17. Scheduling: If the Court elects to compel Defendants to file a dispositive motion, then Defendants request that the Court set the hearing on it at the Court's convenience.

18. Trial: Defendants request a Court Trial, should trial ultimately be required to dispose of this action.

19. Disclosure of Non-party Interested Entities or Persons: As Defendants anticipated the dismissal of this action by Plaintiff's former counsel when the duplicate San Francisco Division Case was settled and dismissed, no disclosures under Civil Local Rule 3-16 have been made.

20. Defendants request the Court to dismiss this action with prejudice.

Dated: January 11, 2008                    Respectfully submitted,

                                           LAW OFFICE OF MICHAEL E. STONE


                                   By:    /s/ Leo B. Siegel
                                          Leo B. Siegel, Attorneys for IGL, et al.

DEFENDANTS IGL, ET AL.'S CASE MANAGEMENT STATEMENT